IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

---

Civil Action No. 1:25-cv-00747-KAS

**RCI HOSPITALITY HOLDINGS, INC.,**
**BIG SKY HOSPITALITY HOLDINGS, INC.,**
**EVANS DINING SERVICES, INC., dba PT'S SHOWCLUB,**
**GALENA DINING SERVICES, INC., dba PT'S SHOWCLUB CENTERFOLD,**
**GLENARM DINING SERVICES, INC., dba DIAMOND CABARET,**
**STOUT DINING SERVICES, INC., dba RICK'S CABARET,** and
**KEVIN DUERBUSCH,**

    Plaintiffs,

v.

**CITY AND COUNTY OF DENVER, COLORADO,**
**DENVER AUDITOR'S OFFICE,**
**DENVER AUDITOR TIMOTHY O'BRIEN,**
**DENVER LABOR,**
**DENVER LABOR EXECUTIVE DIRECTOR MATTHEW FRITZ-MAUER,** in his individual and official capacities, and
**DENVER LABOR HEARING OFFICER ELLEN KELMAN,**

    Defendants.

---

**MOTION FOR MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiffs RCI Hospitality Holdings, Inc. ("RCI"), Big Sky Hospitality Holdings, Inc. ("Big Sky"), Evans Dining Services, Inc., dba PT's Showclub ("PT's Showclub"), Galena Dining Services, Inc., dba PT's Showclub Centerfold ("PT's Showclub Centerfold"), Glenarm Dining Services, Inc., dba Diamond Cabaret ("Diamond Cabaret"), Stout Dining Services, Inc., dba Rick's Cabaret ("Rick's Cabaret") (PT's Showclub, PT's Showclub Centerfold, and Diamond Cabaret, together with Rick's Cabaret, "Plaintiff

Clubs"), and Kevin Duerbusch ("Mr. Duerbusch") (RCI, Big Sky, Plaintiff Clubs, together with Mr. Duerbusch, "Plaintiffs"), through undersigned counsel and pursuant to Fed. R. Civ. P. 65(a), hereby submit this Motion for Preliminary Injunction and in support thereof state as follows.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, undersigned certifies that she conferred with counsel for the City and County of Denver, the Denver Auditor's Office, Denver Auditor Timothy O'Brien, Denver Labor, and Denver Labor Executive Director Matthew Fritz-Mauer and they oppose the requested relief.

Undersigned also conferred with Denver Labor Hearing Officer Ellen Kelman about the relief requested herein. She takes no position.

## INTRODUCTION

This case is necessary to stop the ongoing government overreach of the City and County of Denver, the Denver Auditor's Office, Denver Auditor Timothy O'Brien (the "Auditor"), Denver Labor, Denver Labor Executive Director Matthew Fritz-Mauer ("Director Fritz-Mauer"), and Denver Labor Hearing Officer Ellen Kelman (together, "Defendants"), who have collectively abused the limited investigative powers afforded to (some of) them pursuant to the Denver Revised Municipal Code ("DRMC") to harass, retaliate against, and defame Plaintiffs. Defendants have trampled on Plaintiffs' constitutional due process rights, have issued unlawful government takings, and have misused and abused information illegally compelled under color of law to harass and intimidate Plaintiff Clubs' employees. Further, the Auditor, Denver Labor, and Director

2

Matthew Fritz-Mauer have engaged in a defamatory press tour and smear campaign based on falsehoods and fabricated documents created by them.  Denver Labor and Director Fritz-Mauer's continued reckless dissemination of known falsehoods in the media which are central to pending litigation, and their active and continued harassment of Plaintiff Clubs' employees and potential witnesses to the pending litigation, must be enjoined.

Indeed, Plaintiffs are currently suffering, and will continue to suffer, immediate and irreparable injury, loss, and damage unless the recent actions and threatened continuing actions of Denver Labor and Director Fritz-Mauer of using contact information of Plaintiff Clubs' former and current employees illegally obtained under color of law by Denver Labor is enjoined and restrained by this Court.  Other than a preliminary injunction, Plaintiffs have no adequate remedy at law.

Further, Plaintiffs are currently suffering, and will continue to suffer, immediate and irreparable injury, loss, and damage unless the recent actions and threatened continuing actions of the Auditor, Denver Labor, and Director Fritz-Mauer of disseminating known falsehoods and defamatory lies about business operations in the media and in interviews and press statements and releases is enjoined and restrained by this Court.  Other than a preliminary injunction, Plaintiffs have no adequate remedy at law.

Further, Plaintiffs are currently suffering, and will continue to suffer, immediate and irreparable injury, loss, and damage unless all investigations, determinations, and matters currently on appeal between Plaintiffs and Defendants with Denver Labor are

enjoined and restrained by this Court until the scope of Denver Labor's authority and actions under color of law are determined on the merits. Other than a preliminary injunction, Plaintiffs have no adequate remedy at law.

For the reasons set forth below, Plaintiffs respectfully request that this Court issue a Preliminary Injunction enjoining Defendants, their agents, and representatives from:

1. Initiating contact and/or soliciting Plaintiffs' current and former employees;

2. Discussing this pending litigation and all matters currently on appeal between Plaintiffs and Defendants with Denver Labor and in state court lawsuits filed pursuant to Colo. R. Civ. P. 106, in the media and in interviews and press statements and releases,

3. Issuing further subpoenas, penalties, fines, and investigations against Plaintiffs during the pendency of this case or until a ruling on the scope and extent of Denver Labor's statutory authority related to these government takings;

4. Enforcing any penalty determinations or subpoenas issued to Plaintiffs during the pendency of this case or until a ruling on the scope and extent of Denver Labor's statutory authority related to these government takings; and

5. Proceeding with any appeals, motions, and enforcement actions assigned to Hearing Officer Ellen Kelman during the pendency of this case.

**BACKGROUND**[1]

Under the DRMC, the Auditor is afforded certain, limited authority to investigate allegations of civil wage theft committed by Denver employers. The Auditor's powers were recently expanded when Denver's City Council granted him limited subpoena powers for use in certain wage theft investigations. Defendants have ignored these limitations entirely.

In 2023, Denver Labor and Director Fritz-Mauer decided amongst themselves to launch a series of investigations into Plaintiffs, who operate clubs in the adult entertainment industry. The investigations were initiated not because of any complaints from entertainers (who license with Plaintiff Clubs to dance at their establishments), but because of Director Fritz-Mauer's personal belief that the adult night club industry is rampant with civil wage theft. Plaintiffs cooperated with investigations that were not properly initiated under the statutory authority granted to the Auditor under unlawful threats of penalties and fines, by providing Denver Labor with extensive records for its employees, but maintained their position that Denver Labor was not entitled to receive the confidential information of its entertainer licensees, in part because Plaintiff Clubs' contracts with the entertainer licensees were subject to a strict confidentiality clause, and in part because entertainers do not fall within the definition of "workers" under the DRMC over which Denver Labor purports to have authority.

---

[1] The factual allegations set forth more fully in the Complaint and Jury Demand [ECF 1] are incorporated by reference as if fully set forth herein.

5

Instead of taking Plaintiffs' legal arguments—and entertainers' privacy interests—under review, Denver Labor instead escalated its unauthorized investigations and issued a barrage of subpoenas, requests for information, and penalty determinations against Plaintiff Clubs.  The penalty determinations imposed excessive daily fines without factual basis or authority.  When Plaintiffs exercised their right to appeal these exorbitant penalties, Director Fritz-Mauer ensured that Plaintiffs would not receive a fair hearing by hiring his former employer, Defendant Ellen Kelman ("Hearing Officer Kelman") to rubber-stamp his illegal investigations.  Hearing Officer Kelman did exactly that, most notably at a "hearing" held in January 2025, where she arbitrarily limited the testimony of the Auditor, made her own legal arguments in support of Denver Labor, and precluded Plaintiffs from making critical arguments regarding the threshold issue of whether Denver Labor even had the statutory authority to impose the excessive governmental takings as a penalty for complying with its contractual obligations owed to entertainers regarding their privacy.  The sham "hearing" ended with Hearing Officer Kelman granting a "JMOL" made by Denver Labor in violation of Denver Labor's own illegally promulgated rules.

Plaintiffs have consistently attempted to get Defendants to follow the law, including by educating them on the legal status of entertainers, asking Hearing Officer Kelman to recuse herself, filing petitions to appeal Denver Labor's erroneous penalty determinations, and initiating four Colo. R. Civ. P. 106 proceedings in the District Court for the City and County of Denver.  The more Plaintiffs seek protection by insisting upon

their constitutional rights to due process and against unlawful government takings, the more Defendants are seemingly emboldened to violate those rights.

Denver Labor and Director Fritz-Mauer have launched a media smear campaign in which they have repeatedly disseminated falsehoods and lies regarding Plaintiff Clubs' business operations. Their ongoing false and defamatory statements in the media that Plaintiff Clubs have committed wage theft and minimum wage violations to the tune of millions of dollars, and additional defamatory statements about the false and fabricated bases for two Denver Labor Penalty Determinations imposing millions of dollars in unauthorized fines and penalties that are subject to appeal and have been timely appealed, are causing Plaintiffs, Plaintiff Clubs, and their employees immediate and irreparable reputational harm which is not justified because none of the false and defamatory statements about purported violations of wage theft or minimum wage laws has been confirmed or authorized by any legal or judicial body and such statements are therefore categorically and knowingly false but being constantly disseminated at an alarming rate by Denver Labor and Director Fritz-Mauer.

Further, Denver Labor and Director Fritz-Mauer are currently soliciting and personally emailing, if not calling, Plaintiff Clubs' current and former employees and soliciting confidential employee information and groundless complaints about Plaintiff Clubs. To do this, Denver Labor and Director Fritz-Mauer are using illegally compelled employee information provided to Denver Labor under threat of penalties to harass and intimidate Plaintiff Clubs' employees, witnesses, and litigants.

Defendants have made it clear that they have no intention of stopping their overreaching investigations, violations of due process, illegal government takings, harassment of Plaintiffs' employees, and press tour of lies and manufactured falsehoods. A preliminary injunction is necessary to curb Defendants' unconstitutional actions until the legal claims set forth in the Complaint and Jury Demand [ECF 1] can be decided on the merits.

## LEGAL STANDARD

In order to obtain a preliminary injunction pursuant to Fed. R. Civ. P. 65(a), a moving party must demonstrate: (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest. American Civil Liberties Union v. Johnson, 194 F.3d 1149, 1155 (10th Cir. 1999). Here, Plaintiffs satisfy all four of the required elements for a preliminary injunction.

## ARGUMENT

**I.   PLAINTIFFS (AND OTHERS) WILL SUFFER IRREPARABLE HARM WITHOUT THE INJUNCTION**

As more fully set forth below, Plaintiffs are likely to succeed on their claim that Defendants deprived them of their constitutional rights to due process. Whenever the government denies a party's constitutional right, the party's injury is serious. See Free the Nipple-Fort Collins v. City of Fort Collins, Colo., 916 F.3d 792, 806 (10th Cir. 2019). Indeed, it is well-settled law that most courts consider the infringement of a

8

constitutional right enough on its own to demonstrate irreparable injury.  See, e.g., id. at 805-06.  Here, not only have Defendants *already* violated Plaintiffs' constitutional rights to due process, but without an injunction they will continue to do so, because Denver Labor's baseless investigations are ongoing and they are now using illegally compelled private contact information of former and current employees to expand their illegal investigations and harassment.

In addition to the harm implicit in their violation of Plaintiffs' constitutional rights, Defendants' actions have also caused Plaintiffs significant reputational harm, operational disruption, and an ongoing risk of retaliation.  Overlapping deadlines, excessive subpoenas, and inconsistent procedural demands have forced Plaintiffs to divert critical resources from their business operations, creating unsustainable disruptions.  The persistent threat of additional retaliatory illegal enforcement actions further destabilizes Plaintiffs' ability to function.

To make matters worse, Defendants have proudly displayed the fruits of their baseless investigations to the public by making demonstrably untrue statements about Plaintiffs to the media.  They have on their website home page the false statement "Strip clubs owe $14 million in wage theft, fines."  This is objectively and categorically untrue because the illegal determinations have been appealed and all fines and penalties are stayed during the appeal proceedings.  Denver Labor and Director Fritz-Mauer have now gone on talk radio, had numerous interviews on television and in print and continue to disseminate false statements about the Plaintiff Clubs' business

practices and the illegal penalty determinations. Denver Labor and Director Fritz-Mauer also continue to publish false statements based on their own fabricated documents.

Without injunctive relief, Plaintiffs will remain at the mercy of rouge government actors that have demonstrated bad faith, inefficiency, and a disregard for legal and legal and ethical standards—not to mention a willingness to ignore fundamental due process requirements. This factor therefore weighs heavily in favor of granting a preliminary injunction.

## II. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR PROCEDURAL DUE PROCESS CLAIM

The Fourteenth Amendment to the United States Constitution states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses both procedural due process, which requires the government to employ fair procedures when depriving a person of a property interest, and substantive due process, which guarantees that the government cannot deprive a person of a protected interest for certain reasons. See, e.g., Cty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). The determination of whether an individual's procedural due process rights were violated requires a two-step inquiry: (1) did the individual possess a property interest to which due process protection was applicable; and, if so, then (2) was the individual afforded an appropriate level of process. See Clark v. City of Draper, 167 F.3d 1185, 1189 (10th Cir. 1999). In this case, Plaintiffs were deprived of a protected property interest without the appropriate level of process. They are therefore substantially likely to succeed on the

merits of their procedural due process claim thereby invalidating all of Denver Labor's illegal determinations and unlawful penalties and fines.

### A. Plaintiffs possess a constitutionally protected property interest

The Fourteenth Amendment's procedural protection is a "safeguard of the security of interests that a person has already acquired." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71 (1972). Id. at 576. Whether due process requirements apply to a property interest depends not upon the weight, but the nature of the interest at stake. Id. at 570-71. Property such as "real estate, chattels, or money" are clearly protected by Due Process clause. See id. at 571-76; see also Lesser v. Neosho Cty. Comm. College, 741 F.Supp.854, 860-62 (D. Kan. 1990) (finding that the plaintiff had a property interest in the $4 he was fined by the defendant that was "clearly within the zone of interest intended to be protected by the Fourteenth Amendment to the United States Constitution.")

Here, Defendants have imposed, and continue to impose, numerous exorbitant fines against Plaintiffs and have issued illegal penalty determinations imposing $14MM of purported restitution, penalties, and fines despite being based on fabricated calculations by Director Fritz-Mauer. Plaintiffs clearly have a protected property interest in their money. Thus, with respect to the first inquiry of Plaintiffs' procedural due process claim, Plaintiffs are substantially likely to succeed on the merits.

### B. Plaintiffs were not afforded an appropriate level of process

The second inquiry of a procedural due process claim assesses the level of process due when the government, as it did here, deprives an individual of a protected

11

property interest.  This analysis is "not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands."  Ward v. Anderson, 494 F.3d 929, 935 (10th Cir. 2007).  At a minimum, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  See, e.g., Pater v. City of Casper, 646 F.3d 1290, 1298 (10th Cir. 2011).

In Mathews v. Eldrige, the United States Supreme Court set forth a three-factor balancing test for procedural due process claims that considers: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  424 U.S. 319, 334-35 (1976).

First, Plaintiffs' private interest in their money is self-evident.  And because the amounts at stake are so substantial (fines accruing daily, restitution being calculated contrary to actual payroll records, and at many times fines and penalties being trebled and multiplied arbitrarily), so too should be the process afforded to Plaintiffs.  See, e.g., McDonald v. Wise, 769 F.3d 1201, 1213 (10th Cir. 2014) ("We keep the degree of harm in mind because the greater the harm to an individual's reputation, the greater the corresponding process should be").

Second, the risk of erroneous deprivation is astronomically high under the procedures used by Defendants.  Importantly, the procedures Defendants *should have*

used pursuant to the DRMC and the procedures Defendants *actually* used are not the same.  The DRMC purports to afford procedural safeguards to employers or individuals that are subjected to civil penalties under Chapter 58.  Specifically, § 58-5(a) establishes Plaintiffs' right to appeal Defendants' exorbitant penalty determinations.  Plaintiffs exercised this right by timely submitting their appeals, upon which § 58-5(b) states that:

> The auditor is authorized to appoint one (1) or more hearing officers to certify the record or a summary thereof as required by the auditor, along with the hearing officer's findings, conclusions, and decision. The hearing, if any, shall take place in the city, and notice thereof and the proceedings shall otherwise be in accordance with rules and regulations issued by the auditor. The designated hearing officer may hold hearings pursuant to this article, subpoena witnesses and compel their attendance, administer oaths and take the testimony of any person under oath, and compel witnesses to produce for examination books and papers related to the subject matter of the appeal. The facts and figures submitted shall be submitted under oath or affirmation either in writing or orally at a hearing scheduled by the hearing officer. The petitioner shall bear the burden of proving the allegations in the petition by a preponderance of the evidence. Following a hearing, if any, the hearing officer shall make a final determination, which may be reviewed under Rule 106(a)(4) of the Colorado Rules of Civil Procedure.

Denver Labor appointed a hearing officer, not the Auditor.  Disregard for the plain language of the DRMC in allowing Denver Labor and Director Fritz-Mauer to hand-select the hearing officer for all of its many illegal penalty determinations against Plaintiff Clubs, resulted in the selection of a clearly biased tribunal, Hearing Officer Kelman.  Director Fritz-Mauer's personal selection of his former boss, and Hearing Officer Kelman's refusal to recuse herself despite the clear appearance of impropriety, in and of itself deprived Plaintiffs of procedural due process.  Indeed, "[n]ot only is a biased

13

decisionmaker constitutionally unacceptable but our system of law has always endeavored to prevent even the probability of unfairness." Withrow v. Larkin, 421 U.S. 35, 47 (1975) (internal quotations omitted).  Not only was the selection of Hearing Officer Kelman constitutionally deficient, but Hearing Officer Kelman's actions once appointed continued to deprive Plaintiffs of due process.  As set forth more fully in the Complaint and Jury Demand [ECF 1], and as just one example, Hearing Officer Kelman arbitrarily limited the testimony of the Auditor, consistently interrupted testimony to make her own legal arguments and objections, impermissibly denied Plaintiffs the ability to make arguments in support of their appeal, and more.  Indeed, the "hearing" Defendants purported to afford to Plaintiffs was a hearing in name alone, and in reality, did not give Plaintiffs a meaningful opportunity to be heard.

Finally, although Defendants may claim to have an interest in investigating allegations of wage theft in Denver, Defendants actions in furtherance of this "interest" have far exceeded the bounds of the statutory authority the Auditor was granted.  As just one example, Denver Labor initiated its investigations into Plaintiffs not because of a valid complaint or any other basis authorized by the DRMC, but because of the personal experiences and beliefs of Director Fritz-Mauer.  Any government interest Defendants may claim is therefore outweighed by the constitutional violations suffered by Plaintiffs.

Plaintiffs have a protected property interest in the money that Defendants continue to deprive them of in the form of exorbitant fines and penalties.  Further, because all three Mathews v. Eldrige factors weigh in favor of Plaintiffs, Plaintiffs were

14

not afforded constitutionally sufficient due process in the deprivation of their protected property.  Plaintiffs accordingly are substantially likely to succeed on their procedural due process claim, and the second factor weighs in favor of granting a preliminary injunction.

### III.     THE BALANCE OF EQUITIES WEIGHS IN PLAINTIFFS' FAVOR

Plaintiffs are certain to suffer irreparable harm in the absence of a preliminary injunction because Defendants continue to deprive Plaintiffs of their constitutional right to due process.  The harm to Plaintiffs outweighs any harm Defendants could possibly face if the Court issues a preliminary injunction.  "When a constitutional right hangs in the balance . . . even a temporary loss usually trumps any harm to the defendant."  Free the Nipple, 916 F.3d at 806 (internal quotations omitted).  Plaintiffs have a constitutional right to due process in the administrative and investigative actions that Defendants continue to initiate against them.  Defendants have demonstrated an unwillingness to comport with due process standards in these proceedings.  The resultant harm to Plaintiffs is significant.

Enjoining Denver Labor and Director Fritz Mauer's illegal use of private contact information compelled under color of law and under threat of penalties to contact Plaintiff Clubs' employees directly to harass and intimidate them and solicit unfounded complaints does not harm Defendants.  Allowing this illegal practice to continue harms Plaintiffs.

Enjoining Denver Labor and Director Fritz Mauer's media smear campaign based on falsehoods and lies about the business practices and operations of Plaintiffs' Clubs

and allowing them to repeatedly publish and republish the false conclusions of wage theft to the tune of $14MM based on fabricated documents does not harm Defendants. Allowing the widespread dissemination of lies and false statements in the media and on the internet harms Plaintiffs.

Additionally, a stay of Defendants' ongoing investigations, subpoenas, and penalty determinations will not harm Defendants. As Director Fritz-Mauer has admitted, Denver Labor launched its investigations not due to an outpouring of employee or entertainer complaints, but because of Director Fritz-Mauer's personal beliefs about the adult entertainment industry. Defendants will not be harmed by an Order to put the personal crusade of Director Fritz-Mauer on pause until this case can be decided on its merits.

## IV. THE PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." Awad v. Ziriax, 723 670 F.3d 1111, 1132 (10th Cir. 2012). Defendants, through their baseless investigations, harassment of and retaliation against Plaintiffs and Plaintiff Clubs' employees, and appointment of a biased hearing officer to preside over sham hearings, have violated Plaintiffs' due process rights, just to name a few. The public interest strongly favors granting injunctive relief to ensure that Defendants immediately stop violating fundamental notions of fairness and principles of due process and to prevent additional unlawful takings in the meantime. Defendants have no doubt already wasted thousands of taxpayer dollars on their baseless investigations that operate outside the bounds of the DRMC. It is in the public interest

16

that this egregious and overreaching conduct does not go unchecked.  This factor weighs strongly in Plaintiffs' favor.

## **CONCLUSION**

For the reasons set forth above, and in the Complaint and Jury Demand [ECF 1], all four factors weigh in favor of granting a preliminary injunction under Fed. R. Civ. P. 65(a), to stop the continuing unconstitutional and overreaching conduct of Defendants. This Court should grant Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted this 17th day of March, 2025.

*/s/ Leah P. VanLandschoot*
Leah P. VanLandschoot
Ruth A. McLeod
THE LITIGATION BOUTIQUE, LLC
78 West 11th Avenue
Denver, Colorado 80204
T: 303.355.1942
F: 303.355.2199
Email: lvanlandschoot@thelitbot.com
Email: rmcleod@thelitbot.com
***Attorney for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, a copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** was electronically filed via CM/ECF, and was served via email to the following:

Jonathan D. Saadeh, Atty. No. #47660
Emily L. Anderson, Atty. #53890
Assistant City Attorneys
Employment & Labor Law Section
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202-5332
Telephone: (720) 913-4893
jonathan.saadeh@denvergov.org
emily.anderson@denvergov.org


Ellen Kelman, *Pro Se*
Ellen Kelman ADR, LLC
6619 E. Lowry Blvd, Unit 203
Denver, CO 80230
ellenkelmanadr@outlook.com

/s/ *Grayson Dollarhide*
Grayson Dollarhide